# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

|  |  |
|---|---|
| MARY G., | Case No. CV 23-01972-DFM |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Mary G. appeals the ALJ's decision denying her claim for disability insurance benefits. For the reasons set forth below, the ALJ's denial of benefits is affirmed, and this case is dismissed with prejudice.

## I.   BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on March 11, 2021, alleging disability beginning on June 28, 2020. See Dkt. 10, Administrative Record ("AR") 225-26.[1] Plaintiff's claim was denied initially on July 6, 2021, and upon reconsideration on September 15, 2021. See AR 105-08, 118-22. Thereafter, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). See AR 48-75. The ALJ

---

[1] Citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

issued an unfavorable decision on May 6, 2022. <u>See</u> AR 8-24.

After considering and weighing the evidence, the ALJ applied the five-step sequential evaluation for determining disability. <u>See</u> 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. <u>See</u> AR 13. At step two, the ALJ determined that Plaintiff had the severe impairments of "carpal tunnel syndrome; status post stroke/transient ischemic attack with loss of visual field in the right eye." AR 14. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>See</u> AR 15.

The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following restrictions: "[Plaintiff] cannot climb ladders/ropes/scaffolds; she can occasionally climb ramps/stairs; she can frequently handle and finger; she cannot perform tasks requiring good depth perception; she cannot drive motor vehicles; she cannot work around unprotected heights or dangerous machinery." AR 16.[2] At step four, the ALJ found, based on Plaintiff's RFC and the testimony of a vocational expert, that Plaintiff could perform her past relevant work as a telephone solicitor and appointment clerk. <u>See</u> AR 19. Accordingly, the ALJ concluded that Plaintiff was not disabled. <u>See</u> AR 19-20.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

The Appeals Council denied review of the ALJ's decision. <u>See</u> AR 1-7. Plaintiff then sought judicial review. <u>See</u> Dkt. 1.

## II.   LEGAL STANDARD

A district court will set aside a denial of benefits only if "it is either not supported by substantial evidence or is based on legal error." <u>Luther v. Berryhill</u>, 891 F.3d 872, 875 (9th Cir. 2018) (citation omitted). Under the substantial-evidence standard, the district court looks to the existing administrative record and determines "whether it contains sufficient evidence to support the agency's factual determinations." <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (citation omitted) (cleaned up). "Substantial" means "more than a mere scintilla" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> (citation omitted). This threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." <u>Id.</u> at 1154, 1157. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

## III.   DISCUSSION

The parties dispute whether the ALJ properly evaluated (1) the opinion of Lauren Goli, M.D. and (2) Plaintiff's mental impairments. <u>See</u> Dkts. 11 ("Pl.'s Br."), 16 ("Def.'s Br.").

## A.   <u>Medical Opinion Evidence</u>

Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Goli. <u>See</u> Pl.'s Br. at 3-7.

### 1.   Applicable Law

Plaintiff filed her application on March 11, 2021, after the March 27, 2017, effective date of the Social Security Administration's revised regulations regarding the evaluation of medical evidence. <u>See</u> 20 C.F.R. § 404.1520c

(2017).

Under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022). "The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source, and explain how it considered the supportability and consistency factors in reaching these findings." Id. (citations, alterations, and internal quotation marks omitted). Supportability concerns how "a medical source supports a medical opinion" with relevant evidence, while consistency concerns how "a medical opinion is consistent with the evidence from other medical and nonmedical sources." Id. at 791-92 (citations, alteration, and internal quotation marks omitted).

There is no longer a hierarchy of medical opinions that determines how the opinions are weighed. See id. at 792. "Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." Id. at 787.

## 2.    Medical Opinion and ALJ Decision

Dr. Goli completed a Treating Source Statement on July 29, 2021. See AR 497. Dr. Goli opined that Plaintiff had suffered three strokes that caused complete vision loss in her right eye, which grossly affects her depth perception and makes driving difficult and dangerous. See id. Additionally, Dr. Goli found that due to Plaintiff's carpal tunnel syndrome, doing any desk work involving typing, writing, or repetitive hand motions exacerbates her pain, and she is unable to grip for long periods of time. See id. Finally, Dr. Goli noted that Plaintiff had chronic knee pain and back pain from her obesity and arthritis, and thus should not stay sedentary. See id. Dr. Goli concluded that Plaintiff was unable to work and should be granted permanent disability as her conditions are chronic with little chance for improvement. See id.

In determining Plaintiff's RFC, the ALJ adopted Dr. Goli's belief that Plaintiff could not perform tasks requiring good depth perception. See AR 16. However, the ALJ rejected Dr. Goli's opinion concerning Plaintiff's knees, back, and wrists. See AR 19. The ALJ reasoned that Dr. Goli's assessment that Plaintiff was unable to perform sedentary work was "unsupported by objective physical examination findings or medical imaging evidence of the claimant's knees or back." AR 19. Additionally, the ALJ determined that Dr. Goli's assessment of severe limitations in Plaintiff's wrists was "inconsistent with progress notes indicating that [Plaintiff's] upper extremity symptoms improved with rest and treatment." Id.

### 3.    Analysis

Plaintiff expressly does not contest the ALJ's supportability finding. See Pl.'s Br. at 5 ("[Plaintiff] does not take issue with the rejection of that particular opinion from Dr. Goli."). Instead, Plaintiff contends that the ALJ failed to assess the consistency of Dr. Goli's opinion. See id.[3] The Court disagrees.

Substantial evidence supports the ALJ's finding that Dr. Goli's opinion regarding Plaintiff's impairments was not persuasive. The ALJ reasoned that

---

[3] The Ninth Circuit's decision in Woods v. Kijakazi suggests that even where an ALJ does not assess the supportability of a medical opinion at all, an inconsistency finding supported by substantial evidence is sufficient for the ALJ to find the opinion unpersuasive. See 32 F.4th 785, 792-94 & n.4 (9th Cir. 2022) (upholding ALJ's rejection of doctor's opinion as inconsistent; noting that ALJ "plainly did not intend to make a supportability finding"). Following Woods, various federal district courts have found that a valid supportability or consistency finding is sufficient to affirm the ALJ's decision to discount a medical opinion. See, e.g., Thompson v. Comm'r of SSA, No. 21-08076, 2022 WL 3098039, at *6 (D. Ariz. Aug. 4, 2022) ("Even though the ALJ erred in his consideration of supportability, he properly rejected the opinion based on consistency."). As such, Plaintiff's concession that the ALJ's supportability finding was supported by substantial evidence is sufficient to affirm the ALJ's decision to discount Dr. Goli.

Dr. Goli's assessment of severe upper extremity limitations were inconsistent with progress notes indicating that her symptoms improved with rest and treatment. See 20 C.F.R. § 404.1520c(c)(2) (ALJ measures the persuasiveness of a medical opinion by considering how consistent that medical opinion is with the evidence from other medical sources and nonmedical sources in the claim.). The ALJ pointed to a January 26, 2021, progress note, in which Dr. Goli wrote that Plaintiff's carpal tunnel improved with a Medrol dose pack and carpal tunnel injections, so much so that Plaintiff was recommended to consider repeating this treatment if pain returned. See AR 391, 394. The ALJ also cited an April 27, 2021, progress note, in which Dr. Goli wrote that Plaintiff's carpal tunnel improved with Vitamin D supplementation. See AR 487.

Plaintiff argues that the progress notes show that, despite any improvement, she was still experiencing symptoms regarding her carpal tunnel syndrome. See Pl.'s Br. at 5-6. The ALJ, however, did not find that Plaintiff's treatment cured or fully resolved her upper extremity impairments. Indeed, the ALJ acknowledged Plaintiff's continued complaints of bilateral wrist pain. See AR 17 ("Progress notes from November 2020 documented complaints of bilateral wrist pain." (citation omitted)). Instead, the ALJ reasonably found that Plaintiff's symptoms improved with rest and treatment, which was inconsistent with Dr. Goli's opinion that Plaintiff was unable to work due to her upper extremity impairments. See id. ("[After Plaintiff] started treatment for carpal tunnel syndrome, her symptoms improved. In January 2021, [Plaintiff] stated that her symptoms improved after she received an injection and that she did not believe she needed to see a pain specialist."), id. (noting that State Agency internist observed that range of motion of Plaintiff's elbows, wrists, and hands were within normal limits). Accordingly, the ALJ did not err in rejecting Dr. Goli's opinion.

**B.**   **Mental Impairments**

Plaintiff argues that the ALJ did not properly evaluate her mental impairments. See Pl.'s Br. at 7-11. Specifically, Plaintiff argues that the ALJ failed to fairly consider the "paragraph B" criteria. See id.

**1.**   **Applicable Law**

"The listings describe impairments that are considered to be severe enough to prevent an individual from doing any gainful activity." Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation and internal quotation marks omitted).  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Id.  "If an impairment does not meet a listing, it may nevertheless be medically equivalent to a listed impairment if the claimant's symptoms, signs, and laboratory findings are at least equal in severity to those of a listed impairment. Id. (citation, footnote reference, and internal quotation marks omitted). "If a claimant's impairments meet or equal the criteria of a listing, the claimant is considered disabled."  Id. at 1149 (citation omitted).

To satisfy paragraph B criteria, a claimant's mental disorder must result in an "extreme" limitation of one area, or "marked" limitation of two of the following four areas, of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. See 20 C.F.R. § 404.1520a(c)(3). These four functional areas are known as the "paragraph B" criteria due to how they are categorized in the listings. See 20 C.F.R. Part 404, Subpart P, Appendix 1.

**2.**   **Analysis**

The ALJ concluded that Plaintiff's medically determinable mental impairments of depression and anxiety considered singly and in combination did not cause more than a minimal limitation in her ability to perform basic

mental work activities and were therefore non-severe. See AR 14. The ALJ
noted that Plaintiff initiated mental health treatment around September 2021,
more than a year after her alleged onset date. See id. (citing AR 556).
Additionally, the ALJ pointed to a mental health status examination in
September 2021, which demonstrated normal to mild findings. See id. (citing
AR 557).

In so concluding, the ALJ determined that Plaintiff failed to satisfy the
paragraph B criteria. See id. First, the ALJ found that Plaintiff had a mild
limitation in understanding, remembering, or applying information, noting
that mental status examinations indicated that she had logical thought process,
normal thought content, average intelligence, and normal cognition, insight,
and judgment. See AR 15 (citing AR 557). Second, the ALJ found that
Plaintiff had no limitation in interacting with others, noting that Plaintiff was
cooperative at her medical appointments and did not report issues getting
along with others. See id. (citing AR 556). Third, the ALJ found that Plaintiff
had a mild limitation in concentrating, persisting, or maintaining pace, noting
that there were no subjective complaints or examination findings showing
deficits in attention or concentration. See id. Fourth, the ALJ found that
Plaintiff had no limitation in adapting or managing herself, noting that
Plaintiff was able to take her son to school, cook, perform chores, and go
grocery shopping. See id. (citing AR 258-62).

Given the above record, substantial evidence supports the ALJ's
conclusion that Plaintiff's mental impairments did not "meet all of the
specified medical criteria" or "equal [the] severity" of a listed impairment. See
Ford, 950 F.3d at 1148.

Plaintiff argues that the ALJ erred in interpreting raw medical data into
functional terms. See Pl.'s Br. at 9. Of course, an ALJ cannot "play doctor"
and make his or her own independent medical findings. See Tackett v. Apfel,

8

180 F.3d 1094, 1102-03 (9th Cir. 1999). The ALJ in this case, however, did no such thing. Rather, the ALJ permissibly evaluated the paragraph B criteria based on a reasonable understanding of the evidence record, including mental status examinations and Plaintiff's own testimony during the hearing. <u>See</u> AR 14-15. It is well within the ALJ's province to synthesize and analyze the medical evidence and testimony in determining the extent of Plaintiff's impairments. <u>See</u> 20 C.F.R. § 404.1520b ("After we review all of the evidence relevant to your claim . . . , we make findings about what the evidence shows."); <u>Vasquez v. Astrue</u>, 572 F.3d 586, 591 (9th Cir. 2009) (ALJ responsible for resolving conflicts in medical testimony).

Next, Plaintiff argues that the ALJ ignored her Patient Health Questionnaire-9 (PHQ) and Generalized Anxiety Disorder-7 (GAD) scores, which ranged from moderate to severe. <u>See</u> Pl.'s Br. at 10. But as the Commissioner notes, many of Plaintiff's PHQ and GAD scores indicated no more than mild severity. <u>See</u> Def.'s Br. at 6-7; <u>see also</u> AR 385 (GAD score of 6 indicating mild severity), 464 (PHQ score of 3 indicating "none to minimal" severity), 472 (PHQ of 0 indicating "none to minimal severity"), 524 (PHQ score of 4 indicating "none to minimal" severity", 539 (GAD score of 5 indicating mild severity), 546 (PHQ score of 5 and GAD score of 7 both indicating mild severity). Importantly, moreover, Plaintiff's PHQ and GAD scores "only indicate what Plaintiff (and the ALJ) already notes, that she suffers from major depressive disorder and anxiety; they do not speak to whether or not Plaintiff has marked or extreme limitations in the areas required to satisfy paragraph B." <u>Cardona v. Kijakazi</u>, No. 20-cv-266, 2022 WL 1214707, at *12 (S.D. Cal. Apr. 25, 2022).

Finally, Plaintiff contends that amid "the gap in the record," the ALJ should have further developed the record by, for example, seeking clarification from treating sources. <u>See</u> Pl.'s Br. at 11. But it was Plaintiff's burden at step

two to establish a severe impairment. <u>See</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The claimant bears the burden of proving that she is disabled.") (citation omitted). Moreover, the ALJ had no duty to develop the record because the evidence was not ambiguous, and the record was not "inadequate to allow for proper evaluation of the evidence." <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001). To the contrary, as the ALJ explained, the mental status examinations demonstrated normal to mild findings, including anxious mood, full affect, logical thought process, normal thought content, no evidence of hallucinations or delusions, and normal cognition, insight, and judgment. <u>See</u> AR 14 (citing AR 557).

At best, Plaintiff has offered an alternative interpretation of the evidence. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." <u>Woods</u>, 32 F.4th at 788 (quoting <u>Burch</u>, 400 F.3d at 679).

## IV.   CONCLUSION

The ALJ's denial of benefits is affirmed and this case is dismissed with prejudice.

Date: September 27, 2023

DOUGLAS F. McCORMICK
United States Magistrate Judge